## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-14024-CR-MARTINEZ/MAYNARD

UNITED STATES OF AMERICA,

v.

LUIS ESCOTO,

                    **Defendant.**

_____/

### STIPULATED FACTUAL BASIS IN SUPPORT OF GUILTY PLEA AGREEMENT

COMES NOW, the United States of America, by and through its undersigned Assistant United States Attorney, and LUIS ESCOTO, together with his counsel, admits the government can prove the allegations contained within Count Four of the Indictment, which charges the Defendant with Production of visual depictions of sexual exploitation of minors, in violation of Title 18, United States Code, Section 2252(a)(1); and also stipulates that those allegations, elements of the crime and the following recitation of the facts shall constitute the underlying factual basis for the entry of a plea of guilty in this case.

On January 30, 2023, the mother of Victim 1, a real person, who was a 17-year-old Martin County high school student, contacted a Martin County Sheriff's Office (MCSO) School Resource Officer (SRO), who worked at Jensen Beach High School, to report what she believed to be inappropriate communication. The communication, including messages requesting nude images of her daughter, Victim 1, followed by multiple nude images of Victim 1, in a text thread between Victim 1 and an adult male. The SRO spoke with Victim 1, who identified the Defendant by name, as the adult male in the text thread. Victim 1 stated the Defendant, a 27-year-old St. Lucie County

resident, was a former co-worker with whom she had engaged in sexual intercourse, in 2022, when both were employed at a chain restaurant in Jensen Beach, Martin County Florida. Victim 1's parents supplied Victim 1's iPhone and passcode to Martin County Sheriff Detective Matthew Killough, and following a Child Protective Team interview, Victim 1's parents gave Detective Killough permission to use the iPhone and pose as Victim 1, in an undercover capacity, to continue communicating with the Defendant.

MCSO detectives utilized a law enforcement database to verify the phone number belonged to the Defendant. Through a review of the text messages, detectives confirmed the Defendant planned to meet and engage in sexual activity with Victim 1, at Pineapple Park, after school on January 31, 2023. Were this to occur, due to the ages of the Defendant and Victim 1, it would be a violation of Florida Statute Section 794.05, which makes it unlawful for a person over the age of 24 to engage in sexual activity with a person 16 or 17 years of age.[1]

On February 1, 2023, Detective Killough used Victim 1's iPhone, to pose as Victim 1. Initially, the Defendant was hesitant to believe the text message was from Victim 1, replying "Just in case..(sp) what color is my car." When Detective Killough responded, "red," The Defendant replied, "Ok it's you." Defendant assured that he still wanted to meet with her at Pineapple Park, after school, at 3:00pm. After Detective Killough agreed, the Defendant encouraged Victim 1 to cut off her phone, so that her parents could not track her iPhone, and the Defendant directed her where to meet him. Upon his arrival in his red car, MCSO detectives used vehicles to box in the Defendant's car and detained him in the parking lot of Pineapple Park.

After advising the Defendant of his *Miranda* rights, Detective Killough informed the Defendant, "You can decide at any time to exercise these rights and not answer any questions or

---

[1] Colloquially, the crime is often called "statutory rape."

make any statements." He then asked the Defendant, "Do you understand that?" The Defendant replied, "Yes, Sir."

In summary, according to the Defendant, he first met Victim 1 when he was 26- 27, and she was 17. The Defendant admitted to knowing she was a minor and further stated they engaged in sexual intercourse at least five (5) times in both Martin County and St. Lucie County. The Defendant further admitted he "100 percent" believed he and Victim 1 would engage in sexual activity at the park, on the day of his arrest. The Defendant confirmed that he requested nude images of Victim 1 for sexual pleasure, and that he received nude images of Victim 1 after he sent her examples of how he wanted her to pose for his pictures. He admitted he saved the nude images for sexual gratification. The Defendant also admitted, as Victim 1 was performing oral sex on him in his car, he recorded the sex act holding the iPhone to record it.

Defendant confirmed to Detective Killough, that his iPhone was in his car and provided the passcode to the iPhone. He admitted Victim 1's her photos were in a private file, hidden on the iPhone. He gave MCSO detectives consent to retrieve the iPhone and iPad from his vehicle, which was parked in the Pineapple Park parking lot. The Defendant detailed the locations of his rendezvous with Victim 1, and how they communicated using Remind, an application.

After the iPhone was retrieved from the Defendant's car, Detective Brian Broughton sought to locate to video the Defendant stated he made of Victim 1 performing oral sex on him. Detective Broughton could not find the video. Detective Killough asked him where the videos might be, he told them he had another iPhone on his desk in his residence. The Defendant gave consent to go into the residence to retrieve his red iPhone to get the photos and executed a consent form and provided the passcode for the iPhone.

Once at the residence, the Defendant spoke to his girlfriend, who retrieved the iPhone from inside the residence, and the Defendant gave it to the detectives, and again provided the passcode.

Once back at MCSO headquarters, the Defendant again provided the passcode to the red iPhone, assisted Detective Killough to locate two videos of Victim 1 performing oral sex, which he found in the iCloud folder, which indicated they were created January 15, 2023.

Apple iPhones used to communicate with the victim and/or produce/receive/possess the illegal images were not made in Florida or the United States and thereby, traveled in interstate and/or foreign commerce.

Defendant agrees to abandon to the Martin County Sheriff's Office, voluntarily and immediately all of his right, title and interest to the devices currently in the possession and control of the Martin County Sheriff's Office, including the two iPhones used to communicate with Victim 1 and used to produce and possess the illegal images of Victim 1.

*I, LUIS ESCOTO, am aware of and understand the nature and elements of the charges to which I am pleading guilty, because I have discussed the nature and elements of the charges and what the prosecutor must prove to convict me with my attorney. I understand that the United States must and can prove the following facts or elements of the offense beyond a reasonable doubt:*

**The elements of Production of material containing visual depictions of sexual exploitation of minors, in violation of Title 18, United States Code, Sections 2251(a) and (e) are:**

(1)     an actual minor, that is, a real person who was less than 18 years old, was depicted;

(2)     the Defendant used the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct;

(3)     the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer.

(The "use" element is satisfied if a minor is photographed in order to create pornography. *United States v. Wright*, 2014 WL 7270564 (6th Cir. Dec. 23, 2014))

The term "minor" means any person younger than 18 years old.

The term "producing" means producing, directing, manufacturing, issuing, publishing, or advertising.

A telephone, cellular telephone, and the Internet are all facilities of interstate commerce.

"Interstate or foreign commerce" is the movement of property between different states or between the United States and any place outside the United States.

The term "sexually explicit conduct" includes "lascivious exhibition" of the genitals or pubic area of any person. "Lascivious exhibition" means indecent exposure of the genitals or pubic area, usually to incite lust. Some of the factors considered include:

- the overall content of the material;

- whether the focal point of the visual depiction is on the minor's genitalia or pubic area;

- whether the setting of the depiction appears to be sexually inviting or suggestive – for example, in a location or in a pose associated with sexual activity;

- whether the minor appears to be displayed in an unnatural pose or in inappropriate attire;

- whether the minor is partially clothed or nude;

- whether the depiction appears to convey sexual coyness or an apparent willingness to engage in sexual activity; and

- whether the depiction appears to have been designed to elicit a sexual response in the viewer.

A visual depiction need not have all these factors to be a lascivious exhibition.

The term "visual depiction" includes undeveloped film and videotape, and data stored on computer media or by other electronic means that can be converted into a visual image

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE: 4/9/24          BY: _____

CARMEN M. LINEBERGER
ASSISTANT UNITED STATES ATTORNEY

DATE: 3/22/24          _____

KAFAHNI NKRUMAH
ATTORNEY FOR DEFENDANT

DATE: 3/22/24          _____

LUIS ESCOTO
DEFENDANT

5